**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 2:10-cr-287-GMN-VCF |
| vs. | ) | |
| | ) | **ORDER** |
| LANCE KELLOW, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Pending before the Court is the Motion to Vacate under 28 U.S.C. § 2255, (ECF No. 302), filed by Petitioner Lance Kellow ("Petitioner").[1] The Government filed a Response. (ECF No. 307). Petitioner did not file a reply, and the time to do so has passed.

I. <u>**BACKGROUND**</u>

Petitioner moved to Las Vegas in 2006 and established a mortgage company as a licensed broker. (Tr. of Proceedings at 33–34, 51, ECF No. 252). Petitioner's brothers, Jason Kellow ("Jason") and Vinson Kellow ("Vinson") (collectively "Petitioner's brothers"), moved to Las Vegas with Petitioner and both served as loan officers. (Tr. of Proceedings at 12–13, ECF No. 256). Vinson came upon some financial troubles and, together with Petitioner, they tried to pay off his debt using mortgage loans. (Tr. of Proceeding at 77–80, ECF No. 251). In pursuing this scheme, Petitioner acquired a straw buyer who made false representations on a loan application that Petitioner and his brothers had already filled out. (*Id.* at 83–84). Additionally, Petitioner and his brothers helped the straw buyer misrepresent the amount of money in the straw buyer's account; ultimately, the deal closed on March 15, 2007, with

---

[1] Also pending before the Court is the Motion for Leave to File and Dismiss Attorney, (ECF No. 301), filed by Petitioner. For good cause appearing, the Court **GRANTS in part** Petitioner's Motion in permitting him to file his § 2255 Motion pro se. However, the Court **DENIES** Petitioner's Motion requesting his currently retained counsel, Michael Cristalli, be dismissed.

Vinson accepting a $174,791 check for the sale of the property. (Tr. of Proceedings at 87–89, ECF No. 251); (Tr. of Proceedings at 66–67, ECF No. 255). Petitioner and his brothers repeated this scheme with two other properties. (Tr. of Proceedings at 59, ECF No. 251).

The Government indicted Petitioner and his brothers, and Jason and Vinson eventually accepted plea agreements. (*See* Plea Agreement, ECF No. 31); (*see* Mins. of Proceedings, ECF No. 105). In refusing to take a plea, Petitioner retained Luis Rojas ("Rojas") and Stephen Stein ("Stein") as his trial counsel (collectively "trial attorneys"), and proceeded to trial. (*See, e.g.*, ECF Nos. 7, 9). On March 1, 2013, after a ten-day trial, a jury found Petitioner guilty of Count One of the Second Superseding Indictment, Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349, and Counts Two through Four, Wire Fraud in violation of 18 U.S.C. § 1343. (Jury Verdict, ECF No. 191); (*see* Second Superseding Indictment, ECF No. 92). On July 11, 2013, Petitioner's trial attorneys were withdrawn and excused from further representation, (Mins. of Proceedings, ECF No. 233), and on July 17, 2013, Michael Cristalli was designated as Petitioner's new retained counsel, (ECF No. 236).

On March 7, 2014, the Court sentenced Petitioner to fifty-seven months imprisonment per count, concurrent, followed by five years supervised release, along with restitution in the amount of $834,500. (ECF No. 271); (Judgment, ECF No. 279). Moreover, on March 20, 2014, the Court ordered a criminal forfeiture money judgment of $2,766,400. (ECF No. 277).

Petitioner appealed his conviction to the Ninth Circuit on March 21, 2014, (Not. of Appeal, ECF No. 278), and on June 8, 2015, the Ninth Circuit affirmed Petitioner's judgment and sentence, (Mem. of USCA, ECF No. 295).

On September 29, 2015, the Supreme Court of the State Bar of Nevada sent a Notice of Service to the Courts regarding an Order of Temporary Suspension and Referral to Disciplinary Board for Rojas, Petitioner's trial counsel. Specifically, Rojas pled guilty to Count One of the Criminal Information, False Statement in a Matter Within the Jurisdiction of a Governmental

Agency, in violation of 18 U.S.C. § 1001. (*See* Change of Plea, *United States v. Rojas*, Case No. 2:14-cr-00403-JCM-GWF (D. Nev. June 2, 2015), ECF No. 9). From March 2009 through February 2011, Rojas "submitted a financial disclosure form in an attempt to refinance his home, with a mortgage backed by the Federal Housing Administration ('FHA'), and then submitted a HUD-1 settlement form as part of a subsequent 'short sale' of his property." (Rojas Information 1:23–2:1, Case No. 2:14-cr-00403-JCM-GWF (D. Nev. June 2, 2015), ECF No. 6); (*see also* Rojas Plea Agreement 4:5–5:20, *United States v. Rojas*, Case No. 2:14-cr-00403-JCM-GWF (D. Nev. June 2, 2015), ECF No. 8). Rojas made these "false, fictitious, and fraudulent" representations by not including on the financial disclosure form "an accurate representation of his finances," and, moreover, "the HUD-1 form contained false information about the source of funding for the 'short sale' of [the] property." (Rojas Information 2:2–5); (*see also* Rojas Plea Agreement 4:5–5:20).

On March 5, 2015, Rojas was disbarred from the District of Nevada and on June 1, 2015, the Honorable James C. Mahan sentenced Rojas to three years probation. (Rojas Sentencing, *United States v. Rojas*, Case No. 2:14-cr-00403-JCM-GWF (D. Nev. June 1, 2015), ECF No. 15); (Rojas Judgment, *United States v. Rojas*, Case No. 2:14-cr-00403-JCM-GWF (D. Nev. June 2, 2015), ECF No. 16).

On September 7, 2016, Petitioner filed the instant Motion to Vacate under 28 U.S.C. § 2255, (ECF No. 302). Petitioner seeks § 2255 relief premised primarily on the ground of ineffective assistance of counsel. (Mot. to Vacate at 5).

## II. <u>LEGAL STANDARD</u>

Under 28 U.S.C. § 2255, a petitioner may file a motion requesting the Court which imposed sentence to vacate, set aside, or correct the sentence. 28 U.S.C. § 2255(a). Such a motion may be brought on the following grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose

the sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack." *Id.*; *see United States v. Berry*, 624 F.3d 1031, 1038 (9th Cir. 2010). Motions pursuant to § 2255 must be filed within one year from "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1).

### III. DISCUSSION

In the instant § 2255 Motion to Vacate, Petitioner raises several grounds for challenging his conviction and sentence, including, *inter alia*, ineffective assistance of counsel. (Mem. to Mot. to Vacate 1:16–2:26, ECF No. 302-1). Claims for ineffective assistance of counsel are properly raised on a § 2255 motion. *See United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997) ("The customary procedure for challenging the effectiveness of defense counsel in a federal criminal trial is by collateral attack on the conviction under 28 U.S.C. § 2255.").

Petitioner contends that he was denied effective assistance of counsel because "none of his various pre-trial, trial or appellate attorneys conducted themselves in a professional manner and that all of them . . . left [Petitioner] in a completely undefended condition and without ability to call all necessary witnesses." (Mem. to Mot. to Vacate 5:11–15). Moreover, Petitioner asserts that none of his attorneys ever "properly and fully finish[ed] out their agreed upon responsibilities to full investigate and put on a full and proper defense or direct appeal." (*Id.* 5:18–19).

To establish ineffective assistance of counsel, a petitioner must first show that counsel's conduct was not "within the range of competence demanded of attorneys in criminal cases." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Second, a petitioner must show that he was prejudiced by that performance. *See id.* at 692. Under this standard, the question is whether "counsel's representation fell below an objective standard of reasonableness," and the Court's inquiry begins with a "strong presumption that counsel's conduct [falls] within the wide range of reasonable representation." *United States v. Ferreira–Alameda*, 815 F.2d 1251,

1253 (9th Cir. 1987) (as amended). "[T]he standard for judging counsel's representation is a most deferential one" because "the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge." *Harrington v. Richter*, 562 U.S. 86, 105 (2011). "The benchmark for judging any claim of ineffectiveness must be whether counsel's actions so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

In his personal statement, Petitioner asserts ineffective assistance of counsel by alleging that he received "very threatening phone calls" from Rojas and Stein when he would not accept a plea. (Personal Statement 3:7–17, ECF No. 302-2). The attorneys were "cursing [Petitioner] out and blatantly trying to bully [Petitioner] to fire them if [Petitioner] didn't accept a plea." (*Id.* 3:21–23). Moreover, Petitioner alleges that his trial attorneys "started to tell the government about all our private discussions." (*Id.* 3:23–24). After Petitioner received a guilty verdict, Rojas allegedly telephoned Petitioner, "calling [Petitioner] every swear word in the book and wished [Petitioner] a harsh sentencing and that [Rojas] would do the bare minimum to prepare any objections to [Petitioner's] PSI and Sentencing Memorandum." (*Id.* 5:18–22).

The Government, however, argues that Petitioner cannot satisfy *Strickland*'s "stringent prongs." (Gov't Resp. 16:1, ECF No. 304). First, the Government argues that Petitioner "complains that his attorneys demanded he pay them for their services," but that "nothing in the record suggests that his attorneys stopped representing him to a constitutionally deficient degree." (*Id.* 16:4–7). Moreover, in regards to the trial attorneys' behavior, the Government states that "these allegations do not come close to rebutting the 'strong presumption that counsel's representation was within the wide range of reasonable professional assistance.'" (*Id.* 16:20–17:21). The Government does not address Rojas's conviction. Ultimately, the Government asserts that Petitioner did not experience prejudice.

A trial court has a duty to inquire into a potential conflict of interest when it "knows or reasonably should know that a particular conflict [of interest] exists." *Cuyler v. Sullivan*, 446 U.S. 335, 347 (1980); *see also Garcia v. Bunnell*, 33 F.3d 1193, 1999 (9th Cir. 1994), *cert. denied*, 514 U.S. 1024 (1995). In *United States v. Baker*, 256 F.3d 855 (9th Cir. 2001), the Ninth Circuit held that the guarantee of the right to effective assistance of counsel includes the right to conflict-free representation. *Baker*, 256 F.3d at 859. Conflict-free representation is shown through (1) counsel having actively represented conflicting interests and (2) that the actual conflict adversely affected counsel's performance. *Id.* at 860. Once an actual conflict is established, adverse effect can be demonstrated by showing only "that some effect on counsel's handling of particular aspects of the trial was 'likely.'" *Id.* Unlike a challenge to counsel's competency, prejudice is presumed upon such a showing. *Mannhalt v. Reed*, 847 F.2d 576, 580 (9th Cir. 1988); *see Baker*, 256 F.3d at 860.

Further, "[a]n attorney has an actual, as opposed to a potential, conflict of interest when, during the course of the representation, the attorney's and the defendant's interests diverge with respect to a material factual or legal issue or to a course of action." *Id.* (citing *United States v. Levy*, 25 F.3d 146, 155 (2d Cir. 1994)). When the district court knows or should have known that a potential conflict exists, the Court has a duty to inquire into the potential conflict of interest. *See United States v. Esparza-Serrano*, 81 Fed. Appx. 111, 114 (9th Cir. 2003) (remanding an action for the court to determine whether defendant had a conflict of interest and whether the potential conflict amounted to ineffective assistance of counsel).

In *Baker*, the Ninth Circuit held that the petitioner's attorney did not have a conflict when he represented the petitioner on appeal while under investigation by the United States Attorney's office for the Southern District of New York. *Baker*, 256 F.3d at 858–59. The petitioner was convicted for cocaine possession in the Central District of California, while the attorney pled guilty for conspiracy and bank fraud in connection with fraudulently obtained

bank loans in the Southern District of New York. *Id.* at 858–59. The Ninth Circuit held that because the petitioner was prosecuted, was convicted, and appealed in California, and the attorney in New York on completely different charges, "[t]here is no indication in the record of any connection between any of the parties involved in the two matters." *Id.* at 860. Moreover, the Circuit held there was no "relation between the charges or the underlying activities at issue, or any other link between [the attorney's] cooperation, plea, and sentence in New York and his representation of [the petitioner] in Los Angeles." *Id.* at 861. As such, in *Baker*, the Ninth Circuit held there was no actual conflict.

Conversely, other circuits have found an actual conflict where counsel, while representing a defendant, was under investigation or indictment by the same prosecuting authorities who were prosecuting his client. *See, e.g.*, *Levy*, 25 F.3d at 156 (finding an actual conflict for, *inter alia*, the attorney's prosecution on unrelated charges by same office prosecuting defendant); *Thompkins v. Cohen*, 965 F.2d 330, 332 (7th Cir. 1992) (presuming that an actual conflict may arise when defendant's lawyer is under criminal investigation by the same prosecutor's office, but finding no adverse effect); *United States v. McLain*, 823 F.2d 1457, 1463–64 (11th Cir. 1987) (finding actual conflict where attorney was under investigation by the same United States Attorney's Office prosecuting the attorney's client—the defendant— and attorney had interest in prolonging the trial to delay his own indictment), *overruled on other grounds as recognized by United States v. Watson*, 866 F.2d 381, 385 n.3 (11th Cir. 1989).

Here, Rojas was designated as Petitioner's attorney on June 23, 2010, (ECF No. 7), and Rojas withdrew on July 11, 2013, (ECF No. 233). Rojas's Information shows that Rojas was under investigation between 2009 and 2011, with at least a year and a half of his investigation occurring while he represented Petitioner. (*See* Rojas Information 1:23–2:1).

Although it is unclear as to when Rojas was put on notice that he was being investigated, the Court finds prejudice in Rojas committing the same criminal conduct for which he was defending Petitioner—mortgage fraud. Specifically, Petitioner was convicted for recruiting "a straw buyer to pose as a legitimate property purchaser" in order to "obtain money and property by conducting sham sales of houses." (Second Superseding Indictment ¶ 1–3, ECF No. 92). Similarly, Rojas was convicted for providing false information about the source of funding for the short sale of his property while simultaneously providing an inaccurate representation of his finances. (*See* Rojas Information 1:23–2:1). Both instances involved related factual issues, where Petitioner and Rojas sold houses fraudulently, and both involved related legal issues, where they engaged in fraud. Moreover, Rojas's use of a straw buyer in committing mortgage fraud occurred between February 2011 and March 2011—six months after he began defending Petitioner. (Rojas Plea Agreement 4:20–5:6, ECF No. 8).

Further, it appears that Rojas was being investigated by the same investigating agents who were concurrently investigating Petitioner while Rojas was representing Petitioner.[2] The temporal proximity between Rojas committing his fraud in February 2011, while representing his client, Petitioner, for an almost identical fraud, is significant. Additionally, Rojas was convicted in the District of Nevada, and Petitioner was convicted in the District of Nevada. Due to the amount of overlap between Petitioner's crimes and Rojas's crimes, the Court finds that Petitioner's conviction and Rojas's conviction are sufficiently related to create an actual conflict.

Accordingly, Rojas actively represented Petitioner while being investigated for his own similarly-situated fraud charges. Rojas's conflict and criminal temporal proximity likely affected his handling of Petitioner's trial. *See Baker*, 256 F.3d at 860. The Court finds that

---

[2] While the Southern District of California's AUSAs litigated the Government's case against Rojas, it appears that the same mortgage fraud investigation team agents were involved in both Rojas's and Petitioner's cases. Moreover, Rojas was charged, had pled, and was sentenced in the District of Nevada, the same district in which Petitioner was convicted.

there is an actual conflict and an adverse effect to Petitioner, and therefore prejudice is presumed. *See id.* Even if prejudice were not presumed, the Court finds sufficient prejudice here due to Rojas representing and advising Petitioner while concurrently being investigated for similar charges, and involved in the same criminal conduct of mortgage fraud. As *Strickland* warns, Rojas's actions in this situation have "so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686. As such, the Court grants Petitioner's Motion and vacates his conviction.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that Petitioner's Motion for Leave to File and Dismiss Attorney, (ECF No. 301), is **GRANTED in part** and **DENIED in part**. Specifically, Petitioner's Motion to file his § 2255 Motion pro se is **GRANTED**. However, Petitioner's Motion requesting his currently retained counsel be dismissed is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner's Motion to Vacate under 28 U.S.C. § 2255, (ECF No. 302), is **GRANTED**. Petitioner's original conviction is vacated.

**IT IS FURTHER ORDERED** that Petitioner's pending motions, (ECF Nos. 305, 307, 309, 310, 311), are **DENIED as moot**.

**IT IS FURTHER ORDERED** that a Status Hearing is set for Friday, July 7, 2017, at 10:30 p.m. in Courtroom 7C. The new calendar call and trial dates will be scheduled at the Status Hearing.

///

///

///

///

**IT IS FURTHER ORDERED** that attorney Michael Cristalli is required to be present at the hearing on Friday, July 7, 2017.

**DATED** this 19th day of June, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Court