**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:10-cr-287-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| LANCE KELLOW, ) | |
| ) | |
| Defendant. ) | |
| ) | |

Before the Court is the Government's Motion for Reconsideration, (ECF No. 325), regarding the Court's Order, (ECF No. 324), which granted Petitioner Lance Kellow's ("Petitioner's") Motion to Vacate Sentence under 28 U.S.C. § 2255 ("2255 Motion"), (ECF No. 302). Upon the Court's request, both parties filed supplemental briefs. (ECF Nos. 338, 347). For the reasons discussed below, the Court **VACATES** its prior Order, (ECF No. 324), and upon reconsideration **DENIES** Petitioner's 2255 Motion, (ECF No. 302).

**I.    BACKGROUND**

On March 1, 2013, a jury found Petitioner guilty after a ten-day trial of Count One of the Second Superseding Indictment, Conspiracy to Commit Mail and Wire Fraud in violation of 18 U.S.C. § 1349, Counts Two through Four, Wire Fraud in violation of 18 U.S.C. § 1343, and Count Six, Bank Fraud in violation of 18 U.S.C. § 1344. (Jury Verdict, ECF No. 191); (*see* Second Superseding Indictment, ECF No. 92). The Court accordingly sentenced Petitioner to fifty-seven months imprisonment per count, followed by five years supervised release, along with restitution in the amount of $834,500. (Judgment, ECF No. 279).

Petitioner appealed his conviction to the Ninth Circuit on March 21, 2014. (Not. Appeal, ECF No. 278). On June 8, 2015, the Ninth Circuit affirmed Petitioner's judgment and

sentence. (Mem. USCA, ECF No. 295). That same week, Petitioner's trial counsel, Luis Rojas ("Rojas"), pled guilty to committing a similar type of federal offense as Petitioner. (*See* Designation of Retained Counsel, ECF No. 7) (Designating Rojas as Petitioner's retained counsel beginning on June 22, 2010). Specifically, from March 2009 through February 2011, Rojas "submitted a financial disclosure form in an attempt to refinance his home, with a mortgage backed by the Federal Housing Administration ('FHA'), and then submitted a HUD-1 settlement form as part of a subsequent 'short sale' of his property." (Rojas Information 1:23–2:1, Case No. 2:14-cr-00403-JCM-GWF (D. Nev. June 2, 2015), ECF No. 6); (*see also* Rojas Plea Agreement 4:5–5:20, *United States v. Rojas*, Case No. 2:14-cr-00403-JCM-GWF (D. Nev. June 2, 2015), ECF No. 8). Rojas accordingly pled guilty to violating 18 U.S.C. § 1001, False Statement in a Matter Within the Jurisdiction of a Governmental Agency. (*See* Change of Plea, *United States v. Rojas*, Case No. 2:14-cr-00403-JCM-GWF (D. Nev. June 2, 2015), ECF No. 9). Rojas's criminal acts of mortgage fraud were essentially the same type of crime as those for which Rojas was defending Petitioner. *Compare* (Rojas Information 2:2–5), *with* (Second Superseding Indictment, ECF No. 92).

On September 7, 2016, Petitioner, acting pro se, filed his 2255 Motion, (ECF No. 302). Petitioner argued six grounds for relief: (1) ineffective assistance of counsel; (2) suppression of evidence and prosecutorial misconduct; (3) absence of mens rea; (4) reversible errors in sentencing; (5) insufficient evidence for conviction; and (6) cumulative effect of errors. (2255 Motion 1:16–2:25, ECF No. 302). The Court granted Petitioner's 2255 Motion by finding an "actual conflict" of interest between Rojas and Petitioner arising from Rojas's criminal acts and the Government's investigation which occurred contemporaneously with counsel's representation of Petitioner. (Order 4:6–9:8, ECF No. 324). The Court thus vacated Petitioner's conviction based on ineffective assistance of counsel. (*Id.* 9:15).

The Government filed a Motion to Reconsider on the ground that Petitioner had not raised the issue of an actual conflict of interest in his 2255 Motion. (Mot. to Reconsider 3:10–4:11, ECF No. 325). The Government accordingly requested the Court to stay its decision and permit supplemental briefing that fully addressed the Court's concerns. (*Id.* 4:8–11). The Court granted the Government's request, stayed its decision to vacate Petitioner's conviction, and permitted the parties to file supplemental points and authorities. (Min. Order, ECF No. 326); (*see* Min. Proceedings, ECF No. 331).

## II. LEGAL STANDARD

"[A] motion for reconsideration should not be granted, absent highly unusual circumstances." *Carroll v. Nakatani*, 342 F.3d 934, 945 (9th Cir. 2003) (citation omitted). Reconsideration is appropriate where: (1) the court is presented with newly discovered evidence, (2) the court committed clear error or the initial decision was manifestly unjust, or (3) if there is an intervening change in controlling law. *School Dist. No. 1J, Multnomah Cnty v. ACandS, Inc.*, 5 F.3d 1255, 1263 (9th Cir. 1993).

A motion for reconsideration is not a mechanism for rearguing issues presented in the original filings. *See Backlund v. Barnhart*, 778 F.2d 1386, 1388 (9th Cir. 1985); *see also* D. Nev. L.R. 59-1(b) ("Motions for reconsideration are disfavored. A movant must not repeat arguments already presented unless (and only to the extent) necessary to explain controlling, intervening law or to argue new facts. A movant who repeats arguments will be subject to appropriate sanctions."). Further, a motion for reconsideration "may not be used to raise arguments or present evidence for the first time when they could reasonably have been raised earlier in the litigation." *Carroll*, 342 F.3d at 945.

## III. DISCUSSION

The Government contests the Court's prior Order, (ECF No. 324), on two grounds. First, the Government argues that the Court's Order did not comply with circuit precedent when

it found a conflict of interest. (Gov't Supp. Brief 10:4–11:4, ECF No. 338). Second, the Government argues that even if there was a conflict of interest, the Court should have placed the burden on Petitioner to show how this conflict adversely affected Rojas's representation. (*Id.* 11:5–14:6).

For the reasons discussed below, the Court agrees with the Government that it likely misapplied the parties' burdens of proof, and finds that Petitioner did not satisfy his burden to show an actual conflict of interest. Additionally, the Court finds that procedural rules prevent Petitioner from receiving habeas relief on the remaining grounds in his 2255 Motion.

### A. Ineffective Assistance of Counsel

The Court's prior Order analyzed Petitioner's ineffective assistance of counsel claim through the standard for an "actual conflict of interest." (Order 6:1–12, ECF No. 324) (citing *United States v. Baker*, 256 F.3d 855 (9th Cir. 2001)). The Court thus needed to determine if (1) Rojas actively represented conflicting interests, and (2) the conflict adversely affected Rojas's performance. *Baker*, 256 F.3d at 860. Had the Court found that an actual conflict of interest did not exist, Petitioner would have needed to satisfy a higher standard to show ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984). This higher standard requires Petitioner to show that Rojas's performance "fell below an objective standard of reasonableness," and "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceeding would have been different." *See Strickland*, 466 U.S. at 688–94.[1]

---

[1] 28 U.S.C. § 2255 instructs courts to hold an evidentiary hearing for habeas petitions, such as Petitioner's, "unless the movant's allegations, when viewed against the record, do not state a claim for relief or are so palpably incredible or patently frivolous as to warrant summary dismissal." *United States v. Schaflander*, 743 F.2d 714, 717 (9th Cir. 1984). As discussed in this Order, the Court finds that an evidentiary hearing is not necessary because Petitioner failed to sufficiently state a claim for relief. *See Shah v. United States*, 878 F.2d 1156, 1160 (9th Cir. 1989) (citation omitted).

Addressing now the Government's Motion for Reconsideration, the Court similarly begins its analysis of Petitioner's 2255 Motion where it did before: exploring the presence of an actual conflict of interest.

### i. *Conflict of Interest*

The Court's prior decision explained how Rojas was investigated by the same agents who were investigating Petitioner—with at least a year and a half of the investigation occurring during his representation of Petitioner. (Order 7:21–8:20, ECF No. 324). With those facts, the Court found sufficient concern for a conflict of interest, though the Court admitted it was uncertain about the exact moment when Rojas learned of his own investigation. (Order 6:21–9:8, ECF No. 324). The Court's concern was that Rojas may have chosen to lessen his defense of Petitioner to earn a more lenient result for his own criminal conduct. *See United States v. Levy*, 25 F.3d 146, 156 (2d Cir. 1994) (discussing the presence of a conflict of interest if counsel "may have believed he had an interest in tempering his defense of [his client] in order to curry favor with the prosecution, perhaps fearing that a spirited defense of [his client] would prompt the Government to pursue the case against [counsel] with greater vigor").

Today, however, the Court need not uncover additional facts to determine when Rojas was undoubtedly aware of his own investigation, which would solidify the presence of a conflict of interest. *See United States v. McLain*, 823 F.2d 1457, 1463–64 (11th Cir. 1987), *overruled on other grounds as recognized by United States v. Watson*, 866 F.2d 381, 385 n.3 (11th Cir. 1989). As explained below, even if Petitioner provided the exact moment that Rojas learned of the investigation, Defendant has failed to satisfy his burden of identifying how that conflict seemed to have adversely affected Rojas's representation.

### ii. *Adverse Effect*

The Court now determines that it was more likely Petitioner's burden to show that Rojas's conflict of interest "likely" had some "adverse effect" on his representation of

Petitioner. *See United States v. Walter-Eze*, 869 F.3d 891, 900–01 (9th Cir. 2017); *see also Lockhart v. Terhune*, 250 F.3d 1223, 1231 (9th Cir. 2001) (explaining a defendant needs to show "that 'the attorney's behavior seems to have been influenced' by the conflict") (quoting *Sanders v. Ratelle*, 21 F.3d 1446, 1452 (9th Cir. 1994)). In other words, Petitioner must show "that some plausible alternative defense strategy or tactic might have been pursued but was not and that the alternative defense was inherently in conflict with or not undertaken due to the attorney's other loyalties or interests." *Walter-Eze*, 869 F.3d at 901 (citing *United States v. Wells*, 394 F.3d 725, 733 (9th Cir. 2005)). It is important to note that this burden to identify an adverse effect is not as high as showing prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984); but Ninth Circuit precedent nonetheless warns it "remains a substantial hurdle." *Lockhart*, 250 F.3d at 1231 (quoting *Maiden v. Bunnell*, 35 F.3d 477, 481 (9th Cir. 1994)).

*Lockhart v. Terhune*, 250 F.3d 1223 (9th Cir. 2001), explains the process for identifying an adverse effect, albeit through a different type of conflict than in Petitioner's case. In *Lockhart*, a defendant's counsel engaged in a conflict of interest by representing the defendant for murder while simultaneously representing another person who had been implicated in the same murder. *Id.* at 1231. In the defendant's challenge to his conviction based on ineffective assistance of counsel, the defendant pointed to "a number of actions and inactions" by his counsel that seemed suspicious. *Id.* at 1231–32. For example, the defendant pointed to his counsel's failure to interview or subpoena specific, relevant individuals; and his counsel's failure to inform the jury that his other client had been accused of the same murder. *Id.* at 1231–32. The circuit then analyzed those actions and inactions in the context of the defendant's trial and concluded that there was "no tactical justification" for the counsel's decisions. *Id.* at 1232. Thus, defendant carried his burden to show an "adverse effect" by identifying instances where the circuit could conclude that his counsel was "likely motivated by a desire to protect his other client." *Id.* at 1232.

Here, unlike in *Lockhart*, Petitioner's 2255 Motion and Supplemental Brief do not identify a "plausible alternative defense strategy or tactic" that Rojas might have pursued but did not due to the conflict from Rojas's investigation. *See Walter-Eze*, 869 F.3d at 901. To be clear, Petitioner did identify a few instances where Rojas's actions seem suspicious. For example, Rojas aggressively pressured Petitioner to accept plea agreements, and Rojas allegedly told the Government about Petitioner's desire for his brother (Jason Kellow) to testify at trial and vindicate him. (Personal Statement 3:16–26, ECF No. 302-2). However, Petitioner's 2255 Motion alleges that Rojas's aggressive actions were retaliation for Petitioner's consistent refusal to plead guilty; and there is no allegation that these aggressive actions related to a conflict from a criminal investigation, nor that Rojas made a tactical decision as a result of Petitioner's plea refusals. (*Id.* 3:19–5:20); (2255 Motion 5:10–6:1, 7:17–8:3, ECF No. 302). Petitioner similarly does not relate Rojas's disclosure of Jason Kellow as potential witness to the conflict from Rojas's investigation. Rather, the facts in this case show otherwise, that disclosure was required. (*See* ECF No. 78) (showing a filing on the Court's electronic docketing system on November 2, 2011, which is accessible to all parties, that places Jason Kellow on a witness disclosure list alongside "Kevin Kellow").

Petitioner's Supplemental Brief does not present new allegations or evidence related to a conflict of interest. The Supplemental Brief instead presents an argument that contravenes the applicable legal standard. Indeed, it focuses on the Government's actions in Petitioner's trial, not Petitioner's counsel. (*See* Supplemental Brief at 6:4–18, ECF No. 347) ("The issue is instead why the Government purposely didn't charge Rojas for two years with the express purpose of keeping Rojas as Kellow's counsel . . . .").

Altogether, Petitioner did not satisfy his burden to show that Rojas's conflict of interest from his investigation "likely" had an adverse effect on his performance. The Court thus cannot find an "actual conflict" that warrants habeas relief. *See Lockhart*, 250 F.3d at 1231.

### iii. *Ineffectiveness under* **Strickland v. Washington**

In his 2255 Motion, Petitioner raised claims for ineffective assistance of counsel alleging: (1) failure to conduct themselves in a "professional manner" when discussing plea deals with Petitioner by, among other things, swearing at him and pressuring him; and (2) disregard of duties due to Petitioner's limited funds before trial. (Personal Statement 3:7–4:19, ECF No. 302-2). As explained below, however, Petitioner does not explain how his attorneys' conduct fell outside an objective standard of representation; or a reasonable probability that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *See Strickland v. Washington*, 466 U.S. 668, 694 (1984).

For Petitioner's first ground of ineffective assistance concerning his attorneys' behavior with plea agreements, Petitioner must establish a reasonable probability that his attorneys' actions caused him to reject a plea offer, which he otherwise would have accepted. *See Hill v. Lockhart*, 474 U.S. 52, 59 (1985) (applying the *Strickland* test to ineffective assistance claims from the plea process); *see also Escobedo v. United States*, 56 F. App'x 305, 306 (9th Cir. 2003). However, Petitioner does not provide allegations or evidence to survive this standard. In particular, Petitioner does not declare that his attorneys interfered with the presentation of plea offers; and he does not state that his attorneys provided deficient advice or an incorrect explanation about a plea offer that would have otherwise been accepted. Rather, Petitioner admits in his 2255 Motion that he was "relentless in wanting to go to trial." (*See* Personal Statement 3:26, ECF No. 302-2). Thus, the facts in the record show that Petitioner cannot satisfy his burden to show how his attorneys' conduct fell outside an objective standard, or a reasonable probability that, but-for his attorneys' unprofessional behavior, the results of plea agreements would have been different.

Next, regarding Petitioner's allegations that his attorneys became angry due to a lack of additional funding, Petitioner states that his counsel threatened to not call certain witnesses

unless Petitioner paid travel costs. (2255 Motion 5:11–21, ECF No. 302); (Personal Statement 4:4–8, ECF No. 302-2).[2] Nevertheless, Petitioner does not identify these additional witnesses or the speculated substance of their testimony—which is his obligation at this stage. *See, e.g.*, *United States v. Berry*, 814 F.2d 1406, 1409 (9th Cir. 1987) (finding a failure to show prejudice because the defendant "offers no indication of what these witnesses would have testified to, or how their testimony might have changed the outcome of the hearing"); *see also Dows v. Wood*, 211 F.3d 480, 486–87 (9th Cir. 2000). Neither does Petitioner contend that his attorneys actually failed to call those unnamed witnesses due to a lack of funding. Rather, Petitioner declares that he personally decided not to call certain individuals because of his concern for their well-being, though it is unclear if Petitioner's decision related to all the unnamed witnesses that allegedly should have testified. (*See* Personal Statement 4:9–19, ECF No. 302-2) (". . . the jury was never able to see that evidence or any of my other witnesses because of my concern for the well-being of those individuals."). Therefore, Petitioner again has not satisfied his burden to show how his attorneys' failure to call unnamed witnesses caused him prejudice. *See Saunders v. United States*, 236 F.3d 950, 952 (8th Cir. 2001) ("Because [Saunders] made no showing of what other witnesses were available, how they would have testified, and why such additional evidence would likely have affected the result, he has failed to prove . . . prejudice."). The Court accordingly cannot find ineffective assistance of counsel through the theories offered by Petitioner.

---

[2] The friction between Petitioner and his attorneys based on funding alludes to another form of an actual conflict in this case. *See United States v. Walter-Eze*, 869 F.3d 891, 902 (9th Cir. 2017). Nonetheless, Ninth Circuit precedent instructs that when a pecuniary conflict culminates in a distinct act at issue, the higher standard of prejudice from *Strickland* applies. *Walter-Eze*, 869 F.3d at 902 ("It follows that where a case is sufficiently straightforward such that it can be resolved under *Strickland's* familiar performance-and-prejudice framework, [the] rule of presumed prejudice does not apply."). Here, Petitioner distinctly asserts that his lack of funds caused his attorneys to not call witnesses, and thus the Court considers ineffectiveness through *Strickland's* prejudice analysis rather than an "actual conflict" analysis. (*See* 2255 Motion 5:10–21, ECF No. 302-2). As explained in this Order, Petitioner fails to satisfy his burden to show prejudice based on his lack of funds, and thus the Court need not consider the presence of an "actual conflict." *See Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002) ("Failure to satisfy either prong of the *Strickland* test obviates the need to consider the other.").

**B. Procedural Bars to Relief**

Petitioner additionally argues in his 2255 Motion for the Court to vacate his conviction on five other grounds: (1) suppression of evidence and prosecutorial misconduct; (2) absence of mens rea; (3) reversible errors in sentencing; (4) insufficient evidence for conviction; and (5) cumulative effect of errors. (2255 Motion 1:16–2:25, ECF No. 302). In response, the Government contends that procedural rules bar each of those remaining claims. Specifically, the Government contends that Petitioner did not raise the first claim of evidence suppression or prosecutorial misconduct on direct appeal, and thus cannot do so in a motion under 28 U.S.C. § 2255. (Resp. 11:13–13:12, ECF No. 304). Next, concerning Petitioner's remaining claims mentioned above, the Government points out that the Ninth Circuit already considered and rejected those claims. (*Id.* 10:20–11:11). As a result, the "successive argument rule" prevents Petitioner from relitigating them in his 2255 Motion. (*Id.* 10:4–6). The Court's below discussion addresses each of the Government's arguments in turn.

### *i. Failure to Raise Claim on Direct Appeal*

Here, Petitioner did not raise his prosecutorial misconduct claim during his direct appeal. It is then his burden to show "cause" why the Court should excuse his failure to do so. *United States v. Ratigan*, 351 F.3d 957, 964 (9th Cir. 2003) ("[T]he claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'") (quoting *Bousley*, 523 U.S. 614, 622 (1998)). Moreover, "[a] § 2255 movant procedurally defaults his claims by not raising them on direct appeal and not showing cause and prejudice or actual innocence in response to the default." *Ratigan*, 351 F.3d at 962 (citing *Bousley*, 523 U.S. at 622).

When the Government first raised the issue of procedural default in its Response, (ECF No. 304), Petitioner neither filed a reply nor addressed the procedural default issue in his Supplemental Brief, (ECF No. 347). (*See* Min. Order, ECF No. 303) (providing Petitioner with

a reply deadline of February 6, 2017). Nonetheless, the Court construes Petitioner's 2255 Motion as showing "cause" by challenging the effectiveness of his appellate counsel. (2255 Motion 8:4–6, ECF No. 302) ("The . . . fact that Defendant's trial and appeal counsel did not even mention this gross prosecutorial misconduct goes to reinforce the validity of this claim."). Ineffective assistance of counsel is a recognized exception to the procedural default rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986) (explaining that attorney ineffectiveness which violates the Sixth Amendment is "cause" for a procedural default). The ineffectiveness of counsel on direct appeal invokes the same *Strickland* standard previously discussed in this Order. *See, e.g.*, *Cockett v. Ray*, 333 F.3d 938, 943 (9th Cir. 2003) (quoting *Miller v. Keeney*, 882 F.2d 1428, 1433 (9th Cir. 1989)). Petitioner must accordingly show that his appellate counsel's performance fell below an objective standard of reasonableness and prejudice through "a reasonable probability that, but for counsel's unprofessional errors, [Petitioner] would have prevailed on appeal." *See Cockett*, 333 F.3d at 944.

Upon review of the record, the Court does not find prejudice from appellate counsel's failure to raise the issue of prosecutorial misconduct. Petitioner claims prosecutors in his case "openly and deliberately intimidated" various witnesses in order to prevent them from testifying in favor of Petitioner, (2255 Mot. 7:13–16, ECF No. 302), and allegedly intimidated witnesses by threatening to file new charges rather than honor previous plea agreements. (Personal Statement 4:9–19, ECF No. 302-2) ("[T]he government . . . threatened to indict anyone willing to testify on my behalf."). However, Petitioner's own statements at trial contradict those claims. The record shows that when Petitioner brought the issue of witness intimidation to the Court, he explained that the prosecution declared its intention to file new charges or invalidate plea agreements only if an individual lied under oath or gave the prosecution false information. (Tr. Transcript at 16, ECF No. 269-2) ("And it makes me feel like other people that were willing -- trying to testify couldn't testify . . . because [the

Government was] trying to say that if they don't say what they said, then that they would give them higher conspiracy charges and take away their pleas. So four witnesses that wanted to testify were bullied from testifying."). Thus, it appears the Government acted within its proper authority in reminding witnesses it could withdraw plea agreements if they testified falsely or made inconsistent statements at trial. *See, e.g.*, *United States v. Ballis*, 28 F.3d 1399, 1409 (5th Cir. 1994) ("[I]f a defendant materially breaches his commitments under a plea agreement, the government is released from its obligations under that compact and may bring a new indictment on previously dismissed charges, regardless of what it may have promised earlier.") (citing *United States v. Tilley*, 964 F.2d 66, 71 (1st Cir. 1992); *United States v. Britt*, 917 F.2d 353 (8th Cir. 1990), cert. denied, 498 U.S. 1090 (1991); *United States v. Gonzalez–Sanchez*, 825 F.2d 572, 578 (1st Cir.) cert. denied, 484 U.S. 989 (1987)). Similarly, Petitioner's statements suggest that his decision to not call certain witnesses was based on cautionary avoidance of punishment, not wrongful intimidation. (Personal Statement 4:16–19) ("[T]he jury was never able to see that evidence or any of my other witnesses because of my concern for the well-being of those individuals.").

Because the record does not support Petitioner's claim of prosecutorial misconduct, the Court cannot find prejudice. Without prejudice, Petitioner cannot prove ineffective assistance of appellate counsel; and thus, he cannot demonstrate "cause" for his failure to raise prosecutorial misconduct on direct appeal. *Cockett*, 333 F.3d at 944. Consequently, Petitioner procedurally defaulted on his prosecutorial misconduct claim, and he cannot raise it for the first time in his 2255 Motion.

### ii. Successive Argument Rule

Turning now to Petitioner's arguments for habeas relief based on an absence of mens rea, reversible errors in sentencing, and insufficient evidence for conviction, the Ninth Circuit considered and rejected these claims on direct appeal from Petitioner's conviction. (USCA

Mem. 1–4, ECF No. 295); (2255 Motion 2:4–18, ECF No. 302). Under the successive argument rule, "[i]ssues disposed of on a previous direct appeal are not reviewable in a subsequent § 2255 proceeding." *United States v. Currie*, 589 F.2d 993, 995 (9th Cir. 1979); *see also United States v. Hayes*, 231 F.3d 1132, 1139 (9th Cir. 2000) ("When a defendant has raised a claim and has been given a full and fair opportunity to litigate it on direct appeal, that claim may not be used as a basis for a subsequent § 2255 petition."). Accordingly, the Court denies habeas relief for those claims.

### iii. Cumulative Effect

The final claim in Petitioner's 2255 Motion is for relief based on the cumulative effect of alleged trial and appellate errors. As stated above, however, the Court does not find errors throughout Petitioner's trial and appeal. The Court therefore denies Petitioner's claim for habeas relief based on an alleged cumulative effect of errors.

## IV. CONCLUSION

**IT IS HEREBY ORDERED** that the Court's prior Order, (ECF No. 324), is **VACATED** and Petitioner's 2255 Motion is **DENIED**.

**DATED** this __2__ day of January, 2019.

_____
Gloria M. Navarro, Chief Judge
United States District Court